UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
1-800-FLOWERS.COM, INC.,

                Plaintiff,                      **MEMORANDUM AND ORDER**
                                                               12 CV 1483 (DRH) (ARL)

       - against -

EDIBLE ARRANGEMENTS, LLC,

                Defendant.
-------------------------------------------------------------X
**APPEARANCES:**

**Attorneys for Plaintiff**

**GALLAGHER, WALKER, BIANCO & PLASTARAS**
98 Willis Avenue
Mineola, New York 11502
By:    Thomas E. Plastaras, Esq.

**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
By:    Judith A. Powell, Esq. (*Pro Hac Vice*)

**Attorneys for Defendant**

**COWAN, LIEBOWITZ & LATMAN, P.C.**
1133 Avenue of the Americas
35th Floor
New York, New York 10036
By:    Meichelle R. MacGregor, Esq.
         Scott P. Ceresia, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff 1-800-Flowers.com, Inc. ("plaintiff") commenced this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and seeks a declaratory judgment that plaintiff's "use of its trademarks has not infringed or interfered with" defendant Edible

Arrangements, LLC's asserted rights and does not violate Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). (Compl. ¶ 1.) Presently before the Court is defendant's motion seeking dismissal of the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) or, in the alternative, the Court's discretionary power under the Declaratory Judgement Act. For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

*The Parties and Their Respective Marks*

Plaintiff provides a nationwide floral product and gift delivery service for customers throughout the United States. In the spring of 2011, plaintiff decided to "enter the business of creating and delivering fresh cut fruit arrangements." (Compl. ¶ 8.) In July 2011, plaintiff began using several variations of its mark "Fruit Bouquets," "together with a distinctive stylized strawberry and vine design," (collectively, the "Fruit Bouquets Marks"), in connection with its marketing, sale, and delivery of the fresh cut fruit arrangements." (*Id.*) By December 2011, plaintiff "was selling goods and services" under its Fruit Bouquets Marks in more than 25 markets throughout the country. (*Id.* ¶ 10.) Overall, plaintiff has spent "tens of thousands of dollars in marketing goods and services provided under the [Fruit Bouquets Marks]." (*Id.* ¶ 11.)

Defendant is "in the business of marketing, selling, and delivering fruit arrangements and dipped fruit gift items, as well as selling fruit salads and fruit beverages" at "over 1100 locations within and outside the United States." (*Id.* ¶ 15.) Defendant also owns a "number of registrations" for other marks that it uses in connection with its business (collectively, the "Berry Marks"). (*Id.* ¶¶ 16-18.)

*Plaintiff's Applications for Trademark Registration of the Fruit Bouquets Marks*

Between May and November 2011, plaintiff filed applications with the United States Patent and Trademark Office ("PTO") (the "Applications") seeking to register several versions of the Fruit Bouquets Marks. (*Id.* ¶ 8.) Each of the Applications was approved by the PTO for publication. (*Id.* ¶ 9.)

Thereafter, on February 11, 2012, defendant filed notices of opposition against all of the Applications (collectively, the "Oppositions") with the PTO's Trademark Trial and Appeal Board ("TTAB"). (*Id.* ¶ 23.) In the Oppositions, defendant "contends it 'will be damaged by the use and registration' of Plaintiff's FRUIT BOUQUETS Marks. In particular, Defendant claims that there is a likelihood of confusion between its BERRY Marks and Plaintiff's FRUIT BOUQUETS Marks . . . ." (*Id.* ¶ 24 (citing Ex. K).) Plaintiff asserts that, as of the date it commenced this action, it has been using its Fruit Bouquets Marks for eight months "and has not learned of a single instance of consumer confusion resulting from Plaintiff's and Defendant's use of their respective marks on their respective goods and services." (*Id.* ¶ 26.)

*The March 1, 2012 Telephone Conversation Between the Parties' Counsel*

On March 1, 2012, plaintiff's counsel, Thomas M. Galgano, spoke by telephone with defendant's counsel, Julianne Bochinski, to address the Applications and Oppositions pending before the TTAB. During that conversation, Mr. Galgano asked "whether there was an issue respecting the [ ] Applications that might be rectified by Plaintiff making some change in the design element of" the Fruit Bouquet Marks. (Decl. of Thomas M. Galgano, dated June 29, 2012 ("Galgano Decl.") ¶ 6.) Ms. Bochinski indicated that "there was no such change acceptable to Defendant." (*Id.*)

According to Mr. Galgano, he then inquired as to the "nature of Defendant's objection," and Ms. Bochinski responded by "indicat[ing] that Edible Arrangements objects to 1-800-Flowers' using the marks, making it clear that Defendant not only objected to Plaintiff's registration of its [ ] FRUIT BOUQUETS Marks, but also to Plaintiff's use of the marks." (*Id.* ¶ 7.) Ms. Bochinski "did not suggest that Edible Arrangements' objection to the use of the [Fruit Bouquets] Marks could be addressed through 1-800-Flowers' abandoning its registration effort, and did not link the objection to registration or qualify the objection in any way." (*Id.*)

Ms. Bochinski's version of the March 1, 2012 telephone conversation differs. She states that during the call she indicated "that Edible Arrangements was concerned regarding 1-800-Flowers' attempts to register the term FRUIT BOUQUETS and did not want Plaintiff to use that term." (Decl. of Julianne Bochinski, dated June 1, 2012 ("Bochinski Decl.") ¶ 5.) According to Ms. Bochinski, her "statement regarding use was linked to the issues regarding registration of the Applications for the term FRUIT BOUQUETS and was made in the context of a discussion regarding the [O]ppositions." (*Id.*)

## DISCUSSION

A.  **Legal Standard**

   1.  **Rule 12(b)(1)**

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* "When considering a motion to dismiss for lack of subject matter jurisdiction . . . a court

must accept as true all material factual allegations in the complaint. But, when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (internal citation omitted). The Court may also "look to evidence outside the pleadings . . . in resolving the question of jurisdiction." *Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 175 (2d Cir. 2010); *see also Makarova*, 201 F.3d at 113 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), [the Court] may refer to evidence outside the pleadings.").

  2. **The Declaratory Judgment Act**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

A declaratory judgment action satisfies Article III's case or controversy requirement when it involves a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests," which calls for "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 126 (quoting *Aetna*, 300 U.S. at 240-41). The Supreme Court has

summarized: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*[1]

### B. Plaintiff has Failed to Show a "Case of Actual Controversy"

It is well-settled within this Circuit that the existence of a dispute before the TTAB over the registration of a party's mark, on its own, "is insufficient to establish sufficient adversity for the purposes of a declaratory judgment action." *See Bruce Winston Gem Corp. v. Harry Winston, Inc.*, 2010 U.S. Dist. LEXIS 96974, at *15 (S.D.N.Y. Sept. 16, 2010); *see also Bausch & Lomb Inc. v. CIBA Corp.*, 39 F. Supp. 2d 271, 274 (W.D.N.Y. Mar. 17, 1999) (defendant's filing of opposition to plaintiff's application to register its mark was "not enough to support declaratory judgment jurisdiction"); *Am. Pioneer Tours, Inc. v. Suntrek Tours, Ltd.*, 1998 U.S. Dist. LEXIS 1527, at *8 (S.D.N.Y. Feb. 13, 1998) (same).

Recognizing this authority, plaintiff asserts that his declaratory judgment action is based "not simply on Defendant's opposition to Plaintiff's registration" of its Fruit Bouquets Marks, but on "Plaintiff's *use* of those marks and Defendant's objection to that *use*." (Pl.'s Opp'n at 7 (emphases in the original).) Plaintiff asserts that defendant objected to its use of the Fruit Bouquets Marks in two ways: (1) defendant's "assertions in each of its six different notice of

---

[1] Prior to the Supreme Court's decision in *MedImmune, Inc.*, the Second Circuit had required a plaintiff seeking a declaratory judgment to show that the defendant's conduct "created a real and reasonable apprehension of liability on the part of plaintiff." *See Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 595-96 (2d Cir. 1996) (per curium). The Supreme Court, however, explicitly rejected the "reasonable-apprehension-of-suit test." *MedImmune, Inc.*, 549 U.S. at 132 n.11.

oppositions [filed with the TTAB] that it 'will be damaged by the *use* and registration' of Plaintiff's marks," and (2) defendant's counsel's statement to plaintiff's counsel, during the telephone conversation on March 1, 2012, that "Defendant objected to Plaintiff's *using* its Fruit Bouquet Marks."  (*Id.* (emphases in the original.)

### 1. The Oppositions Filed With the TTAB

Plaintiff argues that each of the six Oppositions "invokes the language of infringement," (Pl.'s Opp'n at 10 (emphasis omitted)) and focuses on the following language, which is contained in the first Opposition and repeated near verbatim in the other five Oppositions:

> Opposer will be damaged by the use and registration of [the mark] by Applicant for Applicant's Goods and Services because persons in the relevant channel of trade and the public viewing Applicant's mark in its entirety . . . will mistakenly assume that Applicant's Goods and Services are associated, endorsed by, affiliated with, or in some other way related to or sponsored by Opposer, to the detriment of Opposer. As such Applicant's mark is not entitled to registration.

(Compl., Ex. K at 6 ¶ 12.)  Plaintiff contends that this language, which it asserts "is adopted from 15 U.S.C. § 1125(a)(1), one of the infringement provisions of the Lanham Act[,]$^2$ . . . goes well beyond what one must assert to state a basis for an opposition before the [TTAB]."  (Pl.'s Opp'n at 10, 11.)

As defendant points out, however, plaintiff has cited to no case law or other legal authority in support of its assertion that "because [the] language [in paragraph 12 of the

---

<sup>2</sup> This provision of the Lanham Act permits a civil action to be commenced against any person who "in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ."  15 U.S.C. § 1125(a)(1)(A).

7

Oppositions] is not necessary to state a claim in an opposition [before the TTAB,] the use of such language amounts to a claim of infringement." (Reply Mem. at 5.) In fact, there is Second Circuit authority that suggests exactly the opposite. In *Topp-Cola Company v. Coca-Cola Company*, 314 F.2d 124, 126 (2d Cir. 1963), the Second Circuit held that a plaintiff could not invoke the court's jurisdiction under the Declaratory Judgment Act when "the only controversy between [the parties] concerns the [plaintiff's] right to register its trademark in Puerto Rico," and "[a]ll the defendant ha[d] done [was] file a notice of opposition in the Puerto Rican proceeding." The Circuit stated that even though "one of the bases of the [defendant's] opposition is that the plaintiff's mark is confusingly similar to the defendant's, the filing of an opposition in a local registration proceeding is not by itself a charge or warning of a future charge of infringement." *Id.*

Although *Topp-Cola* dealt with a plaintiff's application to register a mark in a local Puerto Rican (not federal) proceeding, the case upon which the Second Circuit relied, *Merrick v. Sharp & Dohme, Inc.*, involved a notice of opposition filed in a federal proceeding before the PTO. 185 F.2d 713, 716-17 (7th Cir. 1951) ("A notice of opposition, in proper form, should not be construed to be a charge of infringement or a threat to proceed to redress past infringements or to prevent future infringements."). Moreover, several courts within the Circuit, when dealing with defendants who have filed oppositions before the TTAB, have cited *Topp-Cola* for the proposition that "the filing of an opposition in a trademark registration proceeding 'is not by itself a charge or warning of a future charge of infringement' and therefore does not, without more, create a real controversy." *Am. Pioneer Tours, Inc.*, 1998 U.S. Dist. LEXIS 1527 at *8 (quoting *Topp-Cola*, 314 F.2d at 126); *see also Progressive Apparel Grp., Inc. v. Anheuser-*

8

*Busch, Inc.*, 1996 WL 50227, at *2 (S.D.N.Y. Feb. 8, 1996) (same). Although these cases pre-date *MedImmune* and, thus, applied the now-defunct reasonable-apprehension-of-suit test, plaintiff has cited nothing to suggest that the filing of an opposition in a registration proceeding, alone, demonstrates "a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 126.

Thus, the Court concludes that the cited language in the Oppositions, without more, is insufficient to create an actual controversy between the parties.

## 2. The March 1, 2012 Telephone Conversation Between Counsel

Plaintiff argues that defendant's counsel's statement during the March 1, 2012 telephone conference "represents a real, actual, and substantial controversy between the parties for purposes of the [Declaratory Judgment] Act under the standard articulated by the Supreme Court in *MedImmune*." (Pl.'s Opp'n at 8.) Mr. Galgano, plaintiff's counsel, telephoned Ms. Bochinski, defendant's counsel, after receiving a copy of the Oppositions. He was not able to make contact, however, and left a voice message asking her to return his call. She did so on March 1, 2012. (Compl. ¶ 25; Galgano Decl. ¶ 5.) During that call, Mr. Galgano asked Ms. Bochinski "whether there was an issue respecting the . . . Applications that might be rectified by Plaintiff making some changes in the design elements" of the Fruit Bouquet Marks. (Galgano Decl. ¶ 6.) Ms. Bochinski responded "that there was no such change acceptable to Defendant." (*Id.*)

Mr. Galgano states that he "asked Ms. Bochinski about the nature of Defendant's objection," and Ms. Bochinski "indicated that Edible Arrangements objects to 1-800-Flowers' using the marks, making it clear that Defendant not only objected to Plaintiff's registration of its above-identified FRUIT BOUQUETS Marks, but also to Plaintiff's use of the marks." (*Id.* ¶ 7.)

9

According to Mr. Galgano, Ms. Bochinski "did not suggest that Edible Arrangements' objection to [the] use of the above-identified FRUIT BOUQUETS Marks could be addressed through 1-800-Flowers' abandoning its registration effort, and did not link the objection to registration or qualify the objection in any way." (*Id.*)

Even if the Court were to credit this version of the facts regarding the March 1, 2012 telephone conversation, and viewed those facts in conjunction with the language defendant used in its Oppositions, as plaintiff urges, the Court would nonetheless conclude that plaintiff has failed to identify an Article III case or controversy under the standard articulated in *MedImmune*. Plaintiff cites to three cases decided by district courts both within and outside the Second Circuit in support of its position, (*see* Pl.'s Opp'n 8, 9), but each of these cases is factually distinguishable from the present circumstances.

In *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376 (S.D.N.Y. 2007), both the plaintiffs and defendants marketed and distributed vodka products. The plaintiffs embarked on a publicity campaign implying that their vodka was "the only authentically Russian vodka available in the market," a claim which contradicted the defendants' marketing of their product as a "Russian" vodka. *Id.* at 378-79. The defendants sent the plaintiffs a letter stating that "[m]aking false statements about a competitor's product constitutes . . . unfair competition and false advertising under . . . the Federal Trademark Act." *Id.* at 379. In response, the plaintiffs publicly claimed that the defendants' product was "not truly Russian" and came from Latvia. Subsequently, the defendants issued a press release "stating that it would explore its legal remedies regarding plaintiffs' statements concerning the authenticity of [its] vodka 'in due course.'" *Id.* Shortly thereafter, the defendants commenced a private, non-

binding challenge before the National Advertising Division of the Council of the Better Business Bureau ("NAD"), "whose mission is to 'review national advertising for truthfulness and accuracy' . . . ." *Id.* The plaintiffs commenced a declaratory judgment action seeking a declaration of non-infringement while the NAD proceeding was pending.

The court found that an "actual controversy" existed because, on the one hand, the plaintiffs intended to pursue the advertising campaign, which "question[ed] the authenticity" of the defendants' vodka product, while the defendants, on the other hand, had "engaged in conduct that indicates that there would be a controversy between the parties by sending a cease and desist letter to plaintiffs and initiating a proceeding at the NAD." *Id.* at 383. By contrast, Ms. Bochinski's statement that the "nature of Defendant's objection" to the Applications was that defendant "objects to [plaintiff's] using the marks," (Galgano Decl. ¶ 7), either on its own or viewed in conjunction with the language of the Oppositions, does not evidence the existence of any "definite and concrete" dispute between the parties. *See MedImmune*, 549 U.S. at 126.

Plaintiff also cites *Blue Athletic, Inc. v. Nordstrom, Inc.*, 2010 WL 2836303 (D.N.H. July 19, 2010), a case in which the plaintiff, who had filed an application for trademark registration with the PTO, received two cease and desist letters from defendant, both of which "set out a prima facie case of trademark infringement." *Id.* at *1, 4. Subsequently, the defendant filed formal opposition with the TTAB "which [was] based on a claim that [the plaintiff's] mark would infringe on [its] marks." *Id.* at *4. In concluding that the plaintiff's declaratory judgment action gave rise to a justiciable controversy, the court concluded that "the combination of two demand letters and formal TTAB opposition on infringement grounds, all steeped in the language of trademark infringement, is sufficient to meet the *MedImmune* standard." *Id.* Here, of course,

11

defendant did not send any cease and desist letters to plaintiff, and the statement made by Ms. Bochinski can hardly be described as "steeped in the language of trademark infringement." *See id.*[3]

In *Telebrands Corporation v. Exceptional Products Inc.*, 2011 WL 6029402 (D.N.J. Dec. 5, 2011), the final case relied upon by plaintiff, the corporate defendant's president telephoned the corporate plaintiff's president and alleged that the plaintiff's commercial for its oral care product was "a direct copy" of the defendant's commercial for its own oral care product. *Id.* at *1. The defendant's president "further stated that [the defendant] had a number of causes of action against [the plaintiff]." *Id.* The court found that the controversy between the parties was "of sufficient immediacy and reality because the events that could result in Telebrands incurring liability – the broadcast of the possibly infringing commercial and the sale of the potentially infringing products – have already occurred and indeed, continue to occur," and because "the President of EPI called the President of Telebrands and notified him of EPI's potential causes of action." *Id.* at *2. By contrast, defendant's counsel's statement to plaintiff's counsel – during a conversation that occurred only when defendant's counsel returned plaintiff's counsel's initial telephone call and responded to plaintiff's counsel's inquiries about the nature of defendant's objection to the Applications – does not rise to the level of the statements made by EPI's President, which the court described as tantamount to a "threat of litigation." *See id.* at *4.

---

[3] The defendant's cease and desist letters in *Blue Athletic, Inc.* stated that the plaintiff's mark was "likely to confuse customers into believing [plaintiff's] services are sponsored or affiliated with [defendant]," and so the plaintiff's "use and application conflict with [defendant's] prior rights under the federal Lanham Act." *Blue Athletic, Inc.*, 2010 WL 2836303, at *1. Ms. Bochinski's statement, by contrast, was simply that defendant "objects to 1-800-Flowers' using the marks." (Galgano Decl. ¶ 7.)

Indeed, plaintiff has not presented any legal authority in support of its position that Ms. Bochinski's isolated and rather general comment that defendant objected to plaintiff's use of its mark, either on its own or viewed in conjunction with the language present in the Oppositions, meets the *MedImmune* standard. *See Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1247 (10th Cir. 2008) ("[W]e underscore that we have no need today to pass on what *MedImmune* means to a case where the only indicia of a live infringement controversy is the existence of a single TTAB opposition proceeding, or perhaps a single cease-and-desist letter."). At least one district court has concluded that the existence of three separate cease and desist letters sent to a plaintiff by defendant's counsel were insufficient to create a case or controversy under *MedImmune* when "[t]he prospect of litigation was not mentioned by either party, and Defendant's tone in its letters, while protective of what it perceives to be its legal interests, was certainly not threatening." *World Religious Relief v. Gospel Music Channel*, 563 F. Supp. 2d 714, 726 (E.D.Mich. 2008).

Accordingly, the Court concludes that the language of the Oppositions and the statement made by defendant's counsel during the March 1, 2012 telephone conversation, as recounted in the Galgano Declaration, are insufficient to "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune, Inc.*, 549 U.S. at 126. Thus, the Court finds that the Declaratory Judgment Act's "case of actual controversy" requirement has not been met in this case.[4]

---

[4] Defendant asserts that even if the Court were to conclude that an Article III case or controversy exists, it "should exercise its discretion to decline jurisdiction" pursuant to 28 U.S.C. § 2201(a). (Def.'s Mem. at 9.) Because the Court has concluded that plaintiff has not met the case or controversy requirement in the first instance, it need not address the parties' arguments in this regard.

## *CONCLUSION*

For the reasons set forth above, defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(1) is granted.  The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
         November 28, 2012                                          /s/                        
                                                                  Denis R. Hurley
                                                                  Unites States District Judge